**Robert Allen RATZEL, Plaintiff,**

v.

**MARINETTE COUNTY and Sheriff Joseph Larson, Defendants.**

**Civ. A. No. 88–C–529.**

United States District Court, E.D. Wisconsin.

Sept. 16, 1988.

Robert A. Ratzel, Armstrong Creek, Wis., pro se.

Philip C. Reid, Cook & Franke, S.C., Milwaukee, Wis., for defendants.

ORDER

TERENCE T. EVANS, District Judge.

On May 17, 1988, Robert Allen Ratzel initiated this *pro se* suit against Marinette County and one of its sheriff's deputies, alleging excessive force in arrest and possibly an unlawful arrest as well. Mr. Ratzel has since filed something that resembles a motion to compel discovery; he wants to see a copy of the report that was prepared by the officers who arrested him. The defendants have moved to dismiss for failure to state a claim and because the applicable statute of limitations has expired with regard to Mr. Ratzel's possible claim under 42 U.S.C. § 1983.

I believe that Mr. Ratzel's suit is timely. However, I agree with the defendants that the complaint, as it stands, does not state a claim against Marinette County. Moreover, it is not evident from the complaint that Sheriff Larson had any role whatsoever in the events described therein.

Thus, I will dismiss this suit with two provisos: First, Mr. Ratzel shall have thirty days from the date of this order in which to rectify the shortcomings of his complaint, as described below. Second, the defendants shall send Mr. Ratzel a copy of the arrest report within ten days, so that he may have the benefit of its contents as he attempts to replead.

Mr. Ratzel should pay close attention to the ground rules laid out in the last three pages of this order.

FACTS

On a motion to dismiss, I am required to accept the complaint's allegations as being true. Because Mr. Ratzel is proceeding *pro se,* I have endeavored liberally to interpret his complaint and his rather disjointed letters. The following is my best reconstruction of what Mr. Ratzel says gave rise to this lawsuit.

On or around May 18, 1985, Mr. Ratzel arrived at his vacation cottage at Lake Hilbert. As was his custom, he fired a gun

shot into the air to inform area farmers that he was in the area. That night, while asleep in his cottage, members of the Marinette County Sheriff's Department surrounded the house and ordered Mr. Ratzel to "come out of the building through the back door." Mr. Ratzel woke up and saw through his window that the police were aiming guns his way. He asked whether the police had either an arrest or search warrant, and the officer in command said "no."

At some point, the police asked Mr. Ratzel to identify himself. He stuck his arm out the bedroom window and displayed various forms of identification. A deputy grabbed his arm and tried to pull Mr. Ratzel out the window. At the same time, other officers burst through the cottage's locked oak door. Mr. Ratzel contends that the police "trespassed and harassed me and without sound reason." He seeks redress for injuries to himself and damage to the door.

The police apparently thought that Mr. Ratzel was behaving strangely, so they conveyed him to the Brown County Mental Health Center for examination. According to medical records, doctors at the center found that Mr. Ratzel was cooperative, and they determined that an involuntary commitment was not warranted. The center's records show that Mr. Ratzel was admitted on May 18 and discharged on May 20, 1985. The Wisconsin Department of Health and Social Services later sent Mr. Ratzel a bill of $450 for his two-day stay at the center. He seems to want the defendants to pay that bill.

## DISCUSSION

■ Based on his complaint and accompanying screeds, it appears that Mr. Ratzel is attempting to invoke federal jurisdiction under 42 U.S.C. § 1983, which permits lawsuits against those who deprive others of rights "under color of any statute, ordinance, regulation, custom, or usage, of any State...." In such a case, the district court must borrow from the host state "the *one* most appropriate statute of limitations for *all* § 1983 claims." *Wilson v. Garcia,*

471 U.S. 261, 275, 280, 105 S.Ct. 1938, 1946, 1949, 85 L.Ed.2d 254 (1985) (emphasis added).

The defendants contend that this case is governed by § 893.57, Wis.Stat., which imposes a two-year deadline on lawsuits "to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person...." By this standard, Mr. Ratzel's lawsuit was filed almost a year too late. But another potentially applicable statute is § 893.54(1), Wis.Stat., which imposes a three-year deadline on lawsuits "for injuries to the person." If this latter statute is the right one, then Mr. Ratzel filed his case one day before the deadline.

As the defendants point out, Mr. Ratzel has articulated claims that are analogous to claims for intentional torts—harassment and trespass, and arguably false imprisonment and battery, too. Therefore, the defendants say, the correct limitations period is two years, not three.

But this argument calls for me to do exactly what the Supreme Court in *Wilson* told district courts not to do. There, the Court stated:

Almost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations. In the case before us, for example, the respondent alleges that he was injured by a New Mexico State Police officer who used excessive force to carry out an unlawful arrest. This § 1983 claim is arguably analogous to distinct state tort claims for false arrest, assault and battery, or personal injuries....

... If the choice of the statute of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various § 1983 claims arising in the same State, and multiple periods of limi-

tations would often apply to the same case. There is no reason to believe that Congress would have sanctioned this interpretation of its statute.

*Wilson,* 471 U.S. at 272–75, 105 S.Ct. at 1945–46 (footnotes omitted). To ensure the vitality of section 1983, and to promote uniformity within each state, the Court concluded that "§ 1983 claims are best characterized as personal injury actions," *id.* at 280, 105 S.Ct. at 1949.

In the spirit of *Wilson,* I will not look into the theories behind Mr. Ratzel's claims, although defendants' counsel urges me to do so "with considerable force." Rather, I will heed the Court's admonition that section 1983 is "a uniquely federal remedy," *id.* at 271–72, 105 S.Ct. at 1944, and I find that Wisconsin's general personal injury limitation of three years best advances the remedial purposes of section 1983. Thus, I will apply § 893.54(1), Wis. Stat.

The defendants maintain that two Supreme Court cases handed down after *Wilson* militate against borrowing the three-year limitation period. To be sure, language in *Felder v. Casey* could be construed as a Supreme Court blessing of the two-year intentional torts limit in Wisconsin section 1983 actions. —— U.S. ——, 108 S.Ct. 2302, 2308, 2310 n. 3, 101 L.Ed.2d 123 (1988). I think, though, that the Supreme Court was not passing upon the two-year limit, but only explaining how Wisconsin's notice-of-claim statute discriminated against persons who invoked section 1983 instead of suing on an intentional tort claim.[1] Indeed, Justice White's concurring opinion notes that the two-year versus three-year question was not resolved by the Wisconsin Supreme Court before the *Felder* case made it to Washington. *Id.* at 2315 n. 2. (Apparently, the only Wisconsin opinion to address the issue since is *Hanson v. Madison Service Corp.,* 125 Wis.2d 138,

141, 370 N.W.2d 586 (Ct.App.1985), where the appeals court applied the three-year personal injury limit to section 1983 claims.)

Likewise, I do not believe that a two-year limit is imposed by *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). In that case,[2] the Court ruled that merely negligent conduct does not state a section 1983 claim for deprivation of life, liberty, or property in violation of the due process clause. But it does not follow that section 1983 actions are *ipso facto* claims for intentional torts governed by the two-year deadline. To the contrary, section 1983 remedies only *constitutional* personal injuries. If a plaintiff's section 1983 claim has an analogue in state tort law, it is "the purest coincidence." *Wilson,* 471 U.S. at 272, 105 S.Ct. at 1945. Here, Mr. Ratzel seems to be claiming a violation of his fourth amendment right to be secure against unreasonable seizure. *See Lester v. City of Chicago,* 830 F.2d 706 (7th Cir. 1987) (excessive force in arrest claims governed by fourth amendment reasonableness standard, not by fourteenth amendment due process standard; officers' intent irrelevant).

All in all, then, Mr. Ratzel's lawsuit is timely.

■ By the same token, though, his lawsuit does not state a claim. Specifically, Mr. Ratzel has not explained why Marinette County should be held liable for the actions of the sheriff's deputies who allegedly rousted him from bed in 1985.

[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

---

1. The Court stated: "Second, the notice provision discriminates against the federal right. While the State affords the victim of an intentional tort two years to recognize the compensable nature of his or her injury, the civil rights victim is given only four months to appreciate that he or she has been deprived of a federal

constitutional of [sic] statutory rights." 108 S.Ct. at 2308.

2. And in a companion case, *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

government as an entity is responsible under § 1983.

*Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

Nor has Mr. Ratzel explained how Sheriff Larson figures into this case. As a result of these deficiencies, I must dismiss his present complaint. *See Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (section 1983 claim based on vague allegations will be dismissed); *Shirey v. Bensalem Township,* 501 F.Supp. 1138, 1143 (E.D.Pa. 1980) (dismissal where no individual defendant linked to alleged conspiracy).

However, because Mr. Ratzel appears *pro se* and is obviously unfamiliar with legal protocols, I will allow him to try again. Frankly, I am somewhat reluctant to do this because his prior communications to the court have consisted largely of scrawled, handwritten, unfocused letters. Such correspondence does not tell me—or opposing counsel—exactly what Mr. Ratzel wants or even what he is thinking. Thus, if he wishes to proceed with his case, Mr. Ratzel should do the following:

1. Submit a typewritten or neatly printed double-spaced letter that explains why Marinette County should be held responsible for what allegedly occurred on May 19, 1985. Mr. Ratzel should describe any laws, customs, or policies of the County that may have encouraged or led to the incident in question, if he knows of any. This letter can be no longer than two pages.

2. Attach to the letter described in paragraph 1 another double-spaced letter that explains why Sheriff Larson should be held responsible for what allegedly occurred on May 19, 1985. Was he present at the cottage? How does Mr. Ratzel know? What did Sheriff Larson do? This letter, too, can be no longer than two pages.

3. Note at the top of both letters the words "Robert Ratzel v. Marinette County, Case Number 88–C–529." (Many of Mr. Ratzel's letters have arrived without any identifying infor-

mation, causing my deputy clerk some distress.)

4. Name any other persons who should be defendants in the case.

5. After sending the originals to this court, send a photocopy of both letters, stapled together, to the defendants' lawyer: Mr. Philip Reid, Cook & Franke, 660 East Mason Street, Milwaukee, WI 53202.

The letters I have just described, which I will consider to be an amended complaint, must reach me within thirty days of the date of this order. Failure to comply with these directives will cause me to dismiss this case for good.

To assist Mr. Ratzel, defense counsel must send him a copy of any police report dealing with the events of May 18, 1985, or a statement that no such report exists. Counsel must send the report (if there is one) within ten days of this order. I suggest to Mr. Ratzel that he wait for that report, or a statement that there is none, before he prepares the letters I am requiring. Mr. Reid should also send me a copy of the police report if it exists.

I want to stress two things in closing, mostly for Mr. Ratzel's benefit: First, this ruling does *not* mean that I believe Mr. Ratzel's story. This decision deals with legal technicalities, and I assumed that Mr. Ratzel's story was true *only* for the purpose of addressing those technicalities. Down the road, I might determine that Mr. Ratzel's lawsuit is bunk, or I may find that it has merit. Second, I believe that Mr. Ratzel should consult with a lawyer. If he truly believes that he has a good case, and if he can afford to hire an attorney, he should go out and find a lawyer today. I cannot order him to do so, but I am strongly recommending that he hire counsel (and show the lawyer this opinion) if he is serious. And, if Mr. Ratzel has a good case but no funds, he should still have no difficulty securing the services of a lawyer because a winning lawyer here will get paid by the defendants when the proceedings are over. If no lawyer wants to take the case, it may be an indication to Mr. Ratzel that his case lacks merit.

Therefore, the defendants' motion to dismiss is GRANTED, but the dismissal is without prejudice. Mr. Ratzel shall have thirty days in which to replead. The defendants shall send Mr. Ratzel a copy of the police report, as discussed above. If the defendants wish to conduct discovery— they have suggested that they may want to take Mr. Ratzel's deposition—then Mr. Ratzel shall fully comply with requests from the defendants' lawyer.