Ronald S. REAGAN, Plaintiff,

v.

Sammy HAMPTON, Individually and as Deputy Sheriff of Davidson County Sheriff's Department; Paul R. (Jaybird) McCrary, Individually and as Sheriff of Davidson County; and County of Davidson, Defendants.

Civ. A. No. C–87–617–S.

United States District Court,
M.D. North Carolina,
Salisbury Division.

Nov. 22, 1988.

As Amended Dec. 6, 1988.

Randolph M. James, Winston–Salem, N.C., for plaintiff.

Tyrus V. Dahl, Jr., Winston–Salem, N.C., and Garry W. Frank, Lexington, N.C., for defendants.

## MEMORANDUM OPINION

GORDON, Senior District Judge:

This matter comes before the court on the sheriff's and his deputy's motion for summary judgment pursuant to Federal Rules of Civil Procedure 56(c). The plaintiff has voluntarily dismissed, without prejudice, his claim against the defendant county.

## FACTS

Plaintiff Ronald S. Reagan (Reagan) attended a private party at Southmont Dance Land near Lexington on the night of 5 April 1986. Defendant Deputy Sheriff Sammy Hampton (Hampton) provided security and was compensated by the hosts of the party. Hampton had provided similar services at similar events. At the party, Hampton allegedly struck Reagan from behind on his legs and knocked him to the floor. Reagan alleges that Hampton handcuffed him behind his back and picked him up by the hair and handcuffs. Reagan further alleges that Hampton jerked him onto the stage, shouted obscenities in his face and then pushed him against a wall before throwing him to the ground outside. Reagan claims that Hampton struck him several times about the face and body during this altercation until Reagan's brother interceded and succeeded in having Reagan released into his care and custody. Defendant Sheriff Paul R. McCrary (McCrary) investigated the matter.

Hampton's version of the incident contradicts Reagan's allegations. Hampton and McCrary, however, do not contest the allegations for purposes of this motion so that there will be no issue of disputed material facts.

Reagan filed this action in state court on 6 April 1987, requesting compensatory and punitive damages and reasonable attorneys fees. A summons was issued on that date, but was not served. A second summons was issued on 26 May 1987, but it was not served. Finally, Reagan served the Defendants with a summons and complaint on 3 September 1987. Because the second summons was not sued out within ninety days, Reagan's cause of action commenced on 3 September 1987. *See* N.C.Gen.Stat. § 1A–1, Rule 4(d)(2), (e) (1983). The Defendants removed the action to this court on 16 September 1987.

Reagan asserts in his first cause of action that Hampton's alleged acts, under color of law and without probable cause, violated his fourth and fourteenth amendment rights to be free of an unreasonable seizure and to be free of a deprivation of liberty.

Reagan asserts in his second cause of action that McCrary (and the County of Davidson), acting under color of law, negligently failed to instruct, supervise, control and discipline Hampton on a continuing basis in his duties. Reagan further alleged that McCrary knew or should have known of Hampton's illegal acts; that McCrary had the power and statutory authority to prevent the acts; and that McCrary approved or ratified Hampton's conduct. In the first paragraph of his complaint, Reagan claims that McCrary created a policy or adopted a custom of illegal arrests and the use of excessive force. Reagan claims that McCrary's grossly and recklessly negligent and intentional acts deprived him of his rights guaranteed by the fifth and fourteenth amendments and protected by 42 U.S.C. §§ 1983, 1985(3) and 1986 (1981). Reagan has since voluntarily dismissed the § 1985(3) and § 1986 claims because these claims have no factual basis in this case.

Reagan's third cause of action involves only the County of Davidson. Because this defendant has been dismissed, the court will not discuss this cause of action.

Reagan asserts in his fourth cause of action pendent state claims of false arrest and battery. Defendants contend that these pendent claims are barred by the applicable one-year statute of limitation. N.C.Gen.Stat. § 1–54(3) (1983). In response, Reagan has voluntarily dismissed these claims.

In summary, Reagan has voluntarily dismissed (1) the § 1985(3) and § 1986 claims under the second cause of action, (2) all claims against the County of Davidson, and (3) the pendent state claims under the fourth cause of action. Thus, the court will rule only on Defendants' motion for summary judgment on Reagan's § 1983 claims against Hampton and McCrary. Defendants assert that the claim against Hampton is barred by the statute of limitation prescribed by the Supreme Court in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). As for the claim against McCrary, Defendants assert

that summary judgment is proper because Reagan cannot make a sufficient showing of evidence to establish liability under § 1983.

## STATUTE OF LIMITATION

■ Section 1983 does not contain a specific statute of limitation. Consequently, lower courts have borrowed the most appropriate or analogous state statute of limitation for § 1983 actions. The Court in *Wilson* attempted to eliminate the "confusion" in the courts by construing § 1988 "as a directive to select, in each State, the *one* most appropriate statute of limitations for all § 1983 claims." *Wilson*, 471 U.S. at 275, 105 S.Ct. at 1946. (emphasis added). The Court further held that the forum state's statute of limitation for personal injury actions is the appropriate statute to borrow for determining the timeliness of a § 1983 action. *Id.* at 280, 105 S.Ct. at 1949.

The Court's simple directive to characterize all § 1983 claims as personal injury actions creates confusion in states like North Carolina which have more than one statute of limitations for personal injury actions.[1] *See Preuit & Mauldin v. Jones*, 474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986) (White, J., dissenting from denial of writ of certiorari). N.C.Gen.Stat. § 1–52(5) establishes a three-year period "[f]or criminal conversion, or for any other injury to the person or rights of another, not arising on contract and not hereafter enumerated." N.C.Gen.Stat. § 1–54(3) provides a one-year period "[f]or libel, slander, assault, battery, or false imprisonment." Defendants naturally favor the selection of this latter period because Reagan's claim would be barred

by the lapse of one year and nine days between the injury and the commencement of the suit.

Reagan contends that the three-year period for liability created by a statute continues to be the correct statute of limitation despite the *Wilson* holding. *See Cole v. Cole*, 633 F.2d 1083, 1092 (4th Cir.1980). Section 1–52(2) provides a plaintiff with a three-year period in which to commence an action "[u]pon a liability created by statute, either state or federal, unless some other time is mentioned in the statute creating it." N.C.Gen.Stat. § 1–52(2) (1983). This contention is without merit. *Cf. Epp v. Gunter*, 677 F.Supp. 1415, 1416 (D.Neb. 1988) (court parenthetically notes state statute of limitation for liability created by statute may apply post-*Wilson*). The *Wilson* Court concluded that "[t]he relative scarcity of statutory claims when § 1983 was enacted makes it unlikely that Congress would have intended to apply the catchall periods of limitations for statutory claims that were later enacted" like § 1–52(2). *Wilson*, 471 U.S. at 278, 105 S.Ct. at 1948. Furthermore, all courts addressing this issue with state statutes like § 1–52(2) have not used the catchall provision. *See, e.g., Marks v. Parra*, 785 F.2d 1419 (9th Cir.1986) (Arizona's personal injury statute of limitation, not statute of limitation for liability created by statute is applicable); *McMillan v. Goleta Water Dist.*, 792 F.2d 1453, 1456 (9th Cir.1986) (same for California), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987).

Although a novel question in North Carolina and the Fourth Circuit[2], other courts

---

1. The Court may decide the issue of which limitation period to select when applying *Wilson* in *Okure v. Owens*, 816 F.2d 45 (2d Cir.1987) (New York), *cert. granted*, —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988), or *Thomas v. Shipka*, 829 F.2d 570 (6th Cir.1987) (Ohio), *petition for cert. filed*, 57 U.S.L.W. 3041 (1988).

2. Prior to *Wilson*, the Fourth Circuit analogized § 1983 claims to personal injury actions. *See, e.g., Almond v. Kent*, 459 F.2d 200 (4th Cir.1972) (applying the more general two-year period in Va.). The circuit court merely noted the holding of *Wilson* in *Keller v. Prince George's County*, 827 F.2d 952, 955 n. 2 (4th Cir.1987). The court, in *dicta*, stated that the limitation period for

personal injury actions "is generally several years." *Id.*

West Virginia apparently has only one limitation period for personal injury actions. *See Sattler v. Johnson*, 857 F.2d 224 (4th Cir.1988) (two-year period). A district court judge in Maryland has chosen the three-year period for civil actions rather than a one-year period for assault, battery, libel or slander. *Jones v. Frederick County Bd. of Educ.*, 689 F.Supp. 535, 539 (D.Md.1988). For a discussion of the appropriate limitation period in Virginia, see generally Pagan, *Virginia's Statute of Limitations for Section 1983 Claims after Wilson v. Garcia*, 19 U.Rich.L.Rev. 257 (1985); see also *Jackson v.*

have addressed the issue of which statute of limitation for personal injury actions is applicable in § 1983 cases. A review of relevant cases reveals a split of authority along two distinct lines of reasoning. The Fifth [3], Sixth [4] and Eleventh [5] circuits have considered the paradigmatic wrong protected by § 1983 was most analogous to intentional torts, and, consequently, these circuits have chosen the more specific statute of limitation governing personal injury claims. Their analysis seems strengthened by the Court's holding that negligent actions by public employees cannot support a claim under § 1983. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

The First [6], Second [7], Eighth [8] and Tenth [9] circuits have applied the more general statute of limitation governing personal injury claims to § 1983 actions (1) to better serve the federal interest vindicated by § 1983 and (2) to accommodate the numerous predicate acts actionable under § 1983. The Court's subsequent decisions in *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 2620–21, 96 L.Ed.2d 572 (1987), and *Springfield Township School Dist. v. Knoll,* 471 U.S. 288, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985), seem to support the conclusion that the phrase "personal injury actions" used in *Wilson* should not be read narrowly. There is a split within the D.C. Circuit [10]. The Third [11], Seventh [12] and

*City Council of Charlottesville,* 659 F.Supp. 470, 474–75 (W.D.Va.1987), *aff'd in part, vacated in part,* 840 F.2d 10 (4th Cir.1988) (without opinion).

Judge Dupree in *Jetstream Aero Servs., Inc. v. New Hanover County,* 672 F.Supp. 879, 886 (E.D. N.C.1987), denied as "without substantial merit" defendants' motion to amend their answer to affirmatively plead a one-year statute of limitation defense in light of *Wilson.* The court concluded that the *Cole* decision remained the law in the Fourth Circuit. The court further concluded that any change in the law would not be applied retroactively. Because the plaintiff's claim arose prior to *Wilson* (but filed after *Wilson*), the court found the motion to be without merit.

No question as to the retroactive application of *Wilson* is presented in this case. Reagan's claim arose and was filed well after *Wilson.* Should this court or the Fourth Circuit adopt a new limitation period, the day *Wilson* was decided would be the effective date of the change. *See Hanner v. Mississippi,* 833 F.2d 55, 58 (5th Cir.1987).

This court respectfully declines to follow *Jetstream* to the extent that it holds that *Cole* remains viable after *Wilson.* There can be no doubt as to the prospective effect of the *Wilson* decision. *Id.* at 59 ("as early as *Wilson* the public was fairly on notice that the law respecting limitations periods for section 1983 actions in Mississippi was likely to change").

3. *Gates v. Spinks,* 771 F.2d 916, 919 n. 6, 920 (5th Cir.1985) (Mississippi), *cert. denied,* 475 U.S. 1065, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986).

4. *Mulligan v. Hazard,* 777 F.2d 340, 343–44 & n. 4 (6th Cir.1985) (Ohio), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986).

5. *Jones v. Preuit & Mauldin,* 763 F.2d 1250, 1253–56 (11th Cir.1985) (Alabama), *cert. denied,*

474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986).

6. *Small v. Inhabitants of Belfast,* 796 F.2d 544, 547 (1st Cir.1986) (Maine).

7. *Okure,* 816 F.2d at 49.

8. *Farmer v. Cook,* 782 F.2d 780 (8th Cir.1986) (Missouri). The court in *Farmer* merely stated the appropriate limitation period without analysis. The choice of this general and longer statute of limitation conflicts with one prior decision (and its progeny) in the circuit. *Compare Epp,* 677 F.Supp. at 1419 (four-year period in Neb.) *with Cook v. City of Minneapolis,* 617 F.Supp. 461 (D.Minn.1985) (two-year period).

9. *Meade v. Grubbs,* 841 F.2d 1512 (10th Cir. 1988) (Oklahoma); *Hamilton v. City of Overland Park,* 730 F.2d 613, 614 (10th Cir.1984) (en banc) (Kansas), *cert. denied,* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985) (companion case to *Wilson*). The Tenth Circuit decided *Hamilton* on the same day as *Garcia.* The importance of *Hamilton* is the similarity between the Kansas statutes of limitation and those statutes in North Carolina. The *Hamilton* court chose the period of limitation for "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated" rather than the period for claims of "assault, battery, malicious prosecution, or false imprisonment." This determination remains good law. *See Newcomb v. Ingle,* 827 F.2d 675, 679 n. 7 (10th Cir.1987). This court will follow the *Hamilton* decision.

10. *Compare Williams v. District of Columbia,* 676 F.Supp. 329 (D.D.C.1987) (one-year period) *with Hobson v. Brennan,* 625 F.Supp. 459, 466 (D.D.C.1985) (three-year period). *See also Banks v. Chesapeake and Potomac Tel. Co.,* 802 F.2d 1416, 1429 (D.C.Cir.1986) (three-year period applies in § 1981 actions).

Ninth[13] circuits have not reached this issue. This court will join the growing trend of jurisdictions which have chosen the more general state statute of limitation for personal injury actions to govern § 1983 claims.

The North Carolina General Statutes allows one year to bring an action to recover damages for those personal injury actions under § 1–54(3), and three years for other personal injury actions under § 1–52(5). Section 1–54(3) is a narrowly drawn statute applicable only to certain specific intentional torts. *See* N.C.Gen.Stat. § 1–52(9) (1983) (three-year period for intentional tort of fraud). The North Carolina Supreme Court in *Dickens v. Puryear*, 302 N.C. 437, 444 n. 8, 276 S.E.2d 325 (1981), applied the statutory construction rule of *expressio unius est exclusio alterius* when deciding that the general statute of limitation, § 1–52(5), rather than § 1–54(3) governed claims of intentional infliction of mental distress. The general statute of limitation also governs claims of malicious prosecution, *Evans v. Chipps*, 56 N.C.App. 232, 287 S.E.2d 426 (1982), despite this tort's "considerable resemblance to claims for defamation and false imprisonment." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on The Law of Torts* § 119 (5th ed. 1984). Furthermore, Judge Bullock has stated that "§ 1–52(5) appears to apply to all actions for personal injuries that are not specifically enumerated elsewhere in a district statute of limitation." *Smith v. Cessna Aircraft Co.*, 571 F.Supp. 433, 436 (M.D.N.C.1983). Thus, North Carolina's limitation scheme does not lend itself to a rigid dichotomy found in those states where courts have chosen the more restrictive statute of limitation. *See, e.g., Gates,* 771 F.2d at 919 (intentional and other torts); *Jones,* 763 F.2d at 1253–56 (trespass and trespass on the case); *Cook,* 617 F.Supp. at 464 (intentional torts and negligence).

The selection of the appropriate statute of limitation for § 1983 actions is a question of federal law. *Wilson,* 471 U.S. at 268–71, 105 S.Ct. at 1942–44. Nonetheless, the court will consider a state court's decision involving the issue of which state statute of limitations governs § 1983 actions in North Carolina. A unanimous panel of the court of appeals recently concluded that the general three-year period was the appropriate limitation to apply in a building contractor's § 1983 suit against a municipality. *Gentile v. Town of Kure Beach,* 91 N.C.App. 236, 240, 371 S.E.2d 302 (1988). This decision supports this court's conclusion that § 1–52(5) is the applicable statute in light of *Wilson.*

This court holds that the remedial purposes of § 1983 would be ill served by compressing the potentially infinite variety of constitutional claims available under the statute into the narrow confines of a one-year statute of limitation. *See Johnson v. Davis,* 582 F.2d 1316 (4th Cir.1978); *but cf. Burnett v. Grattan,* 468 U.S. 42, 61, 104 S.Ct. 2924, 2935, 82 L.Ed.2d 36 (1984) (Rehnquist, J., concurring in the judgment) (one-year period reasonable because Congress enacted that period to govern § 1986 actions). The decision will not discriminate against a § 1983 claim by treating it less favorably than a comparable state claim.

---

11. Courts in New Jersey and Pennsylvania apparently do not have to choose between personal injury statutes of limitation. *See Napier v. Thirty Or More Unidentified Fed. Agents,* 855 F.2d 1080, 1087 (3d Cir.1988) (two-year period in N.J.); *Knoll v. Springfield Township School Dist.,* 763 F.2d 584 (3d Cir.1985) (two-year period in Pa.).

12. Courts in Illinois and Indiana apparently do not have to choose between personal injury statutes of limitation. *See Anton v. Lehpamer,* 787 F.2d 1141 (7th Cir.1986) (two-year period in Ill.); *Bailey v. Faulkner,* 765 F.2d 102 (7th Cir. 1985) (two-year period in Ind.). Yet Judge Evans in *Ratzel v. Marinette County,* 694 F.Supp. 606, 608 (E.D.Wis.1988), held that Wisconsin's general statute of limitation would govern § 1983 actions.

13. Courts in California, Oregon, Arizona and Alaska apparently do not have to choose between personal injury statutes of limitation. *See Donoghue v. County of Orange,* 828 F.2d 1432 (9th Cir.1987) (one-year period in Cal.); *Davis v. Harvey,* 789 F.2d 1332 (9th Cir.1986) (two-year period in Or.); *Marks,* 785 F.2d at 1419–20 (two-year period in Ariz.); and *DeNardo v. Murphy,* 781 F.2d 1345 (9th Cir.) (two-year period in Ala.), *cert. denied,* 476 U.S. 1111, 106 S.Ct. 1962, 90 L.Ed.2d 648 (1986).

Pagan, *supra*, at 270. By retaining the three-year period, albeit under a different classification, this decision also will not prejudice either party. Moreover, the court is mindful that its decision as to the appropriate statute of limitation for § 1983 actions also will govern § 1981 actions. *Goodman*, 107 S.Ct. at 2621 (extending *Wilson* to § 1981 claims).

Because (1) this court has chosen the three-year period of limitation for personal injury actions to govern § 1983 actions in North Carolina and (2) Reagan has filed his § 1983 claims within this period, his action is not time barred. Therefore, the court will deny Defendants' summary judgment motion as to this claim.

## CLAIMS AGAINST SHERIFF McCRARY

Reagan asserts § 1983 claims against McCrary both in his individual and official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (courts must differentiate between personal- and official-capacity suits). Individual-capacity claims seek to impose supervisory (personal) liability, while official-capacity claims seek to impose municipal liability. At this time, Defendants have moved for summary judgment on all these claims. The record consists of the pleadings and supporting briefs from both parties, and the depositions of Reagan and Hampton. Reagan has conducted extensive discovery.

The standard for ruling on Rule 56 motion is clear. Once the movant demonstrates the absence of material issues of fact, summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317, 106 S.Ct. 2548, 2548, 91 L.Ed.2d 265 (1986). Reagan bears the heavy burden of proof on each element of the statutory claims. Applied to the facts of this case, the law requires the court to grant summary judgment in favor of McCrary on all claims.

### A. Supervisory Liability.

■ Reagan's individual-capacity claim essentially concerns McCrary's alleged failure to supervise his deputies.[14] A supervisor may be liable when his deliberate indifference to or acquiescence in a subordinate's misconduct is affirmatively linked to the constitutional harm suffered by a plaintiff. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Slakan v. Porter*, 737 F.2d 368 (4th Cir.1984), *cert. denied sub nom., Reed v. Slakan*, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). Reagan bears the heavy burden of showing that McCrary's inaction amounted to deliberate indifference to or tacit authorization of the illegal arrests and the use of excessive force. Reagan "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents." *Slakan*, 737 F.2d at 373 (citing *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir.1980), *cert. denied*, 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981)). Thus, "a failure to supervise gives rise to § 1983 liability ... only in those situations in which there is a *history of widespread abuse*." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (emphasis added).

Reagan has presented no evidence of McCrary's "deliberate indifference" or "tacit authorization" to substantiate his conclusory allegations. In his deposition,

---

**14.** Reagan claimed that McCrary *"negligently failed to instruct, supervise, control and discipline on a continuing basis Defendant Sammy Hampton in his duties."* Complaint at ¶ 16 (emphasis added). This allegation fails to state a claim under § 1983. *See City of Springfield v. Kibbe*, 480 U.S. 257, 107 S.Ct. 1114, 1121, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting); *Daniels*, 474 U.S. 327, 106 S.Ct. 662 (§ 1983 liability does not arise from negligent conduct); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668,

88 L.Ed.2d 677 (1986) (same). Because Reagan later claims that McCrary "intentionally or recklessly failed to perform" these duties, the court will entertain this claim. Complaint at ¶ 18.

To the extent that Reagan has claimed that McCrary created a policy or adopted a custom of illegal arrests or the use of excessive force which would subject him to *individual* liability, the court would grant summary judgment as discussed *infra*.

Reagan admitted that he had no evidence of McCrary's failure to instruct, supervise, control and discipline his deputies. Reagan Depo., p. 76, 1. 14– p. 78, 1. 22. In contrast, Hampton has stated that he has developed a certain expertise in handling arrestees as a result of experience and the completion of over 1,500 hours of formal instruction in his twenty two year law enforcement career. Hampton Depo., p. 15, 11. 4–23. Hampton could not recall any complaints brought against him, nor could he recall any investigations of his conduct. *Id.* at p. 20, 1. 19– p. 22, 1. 5. Furthermore, Hampton was a defendant in only one suit which was dismissed in the summer of 1977. *Id.* at p. 22, 1. 6– p. 23, 1. 4. These facts, even in the light most favorable to Reagan, reveal an absence of widespread abuse necessary to establish the requisite fault. Similarly, Reagan has failed to show an "affirmative link" between McCrary's inaction and the violation of Reagan's constitutional rights. Accordingly, the court will grant Defendants' motion for summary judgment on the personal-capacity claim for failure to supervise.

### B. Municipal Liability.

Reagan asserts two official-capacity claims against Sheriff McCrary.[15] First, Reagan alleges that McCrary created a policy authorizing illegal arrests and the use of excessive force which lead to the violation of his constitutional rights. Complaint at ¶ 1. Second, Reagan alleges that McCrary failed to halt or correct a widespread pattern of unconstitutional seizures and the use of excessive force. *Id.* These theories of liability must be tested against three requirements to "avoid imposing by indirection a form of vicarious municipal liability flatly rejected by *Monell.* Those critical points are (1) identifying the specific 'policy' or 'custom'; (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation." *Spell v. McDaniel,* 824 F.2d 1380, 1389 (4th Cir.

1987) (citations omitted), *cert. denied sub nom., City of Fayetteville v. Spell,* —— U.S. ——, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). These substantive requirements are stringent. *Id.* at 1391.

1. Policy of illegal arrest and use of excessive force.

■ Identifying the specific policy is the first element for establishing municipal liability. Policy is the deliberate decision by a municipality's authorized "policymaker" to pursue a course of action. *Id.* at 1386. Reagan does not claim that his rights were violated as a result of a specific policy itself unconstitutional. Thus, he must undertake the "difficult if not impossible" task of proving policy through "more attenuated connections." *Id.* at 1388–89.

"[P]roof of a single violation will not support the inference that the violation resulted from a municipal 'policy'...." *Id.* at 1391 (citation omitted). The Court in *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), held that a single, deliberate act by a police officer was insufficient to prove a municipal policy of inadequate police training. Yet in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court held the city liable for a single decision made by the county prosecutor. The critical difference between these cases is that in *Tuttle* a nonpolicymaker acted, whereas in *Pembaur* a policymaker acted.

The complaint alleges, and Defendants admit for purposes of this motion, that Deputy Hampton used excessive force to effectuate an illegal arrest of Reagan. Yet Reagan concedes that discovery has disclosed that Sheriff McCrary (1) had no personal participation prior to the incident; (2) that he was not present; (3) and that he had not given Hampton any specific orders with respect to Reagan. Thus, the facts resemble those in *Tuttle:* a single act by a nonpolicymaker. Permitting a jury to im-

---

**15.** To be analytically correct without being redundant, the court holds, to the extent that Reagan has claimed that McCrary is liable in his *official* capacity for his alleged failure to supervise, that summary judgment is proper as discussed *supra.*

pose municipal liability on these facts would be erroneous as a matter of law.

Reagan attempts to avoid summary judgment by citing McCrary's subsequent investigation of the incident. Even assuming that McCrary had the "final authority" to make municipal policy, Reagan makes no showing beyond his allegations that McCrary acted with deliberate indifference to or reckless disregard for Reagan's rights. Deposition testimony reveals a thorough investigation of the incident which exonerated Hampton of any blame. Hampton Depo., p. 90, 1. 12– p. 94, 1. 1; Reagan Depo., p. 77, 1. 20– p. 78, 1. 4. Such an investigation does not support an inference of fault necessary to establish liability under § 1983. *See Burnham v. West*, 681 F.Supp. 1160, 1162 (E.D.Va. 1987). Because Reagan has failed to show the requisite fault, the court will grant Defendants' motion for summary judgment on the claim that McCrary established a policy of unconstitutional conduct.

2. Custom of illegal arrest and use of excessive force.

■ A plaintiff must first prove a specific custom to establish municipal liability. Custom is the " 'persistent and widespread ... practices of [municipal] officials [which] [a]lthough not authorized by written law, [are] so permanent and well settled as to [have] the force of law.' " *Monell v. Department of Social Servs. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) (citing and quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). Just as in the policy analysis, proof of a single violation "cannot support an inference that the violation resulted from a municipality condoned custom of comparable practices." *Spell*, 824 F.2d at 1391 (citation omitted).

Reagan offers no evidence beyond his allegations that McCrary adopted a custom of illegal arrests and the use of excessive force. Reagan Depo., at p. 79 11. 3–24. Reagan merely points to the events of the night of April 5 and McCray's subsequent investigation of the incident. Because the isolated acts do not constitute a sufficient showing of the existence of a custom, the court will grant Defendants' motion for summary judgment on the claim that McCrary adopted a custom of unconstitutional conduct.

### CONCLUSION

For the foregoing reasons, it is concluded that Reagan's § 1983 claims against Hampton in his first cause of action are not barred by the applicable statute of limitations, N.C.Gen.Stat. § 1–52(5), thus Defendants' motion for summary judgment as to this claim is DENIED; and that Defendants' motion for summary judgment as to each of Reagan's § 1983 claims against McCrary should be GRANTED. Accordingly, an order will be entered.